Alan A. Meda (#009213)
BURCH & CRACCHIOLO, P.A.
1850 N. Central Ave., Suite 1700
Phoenix, AZ 85004
Tel: 602.274.7611
ameda@bcattorneys.com

*Proposed Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Chapter 11 Subchapter V |
|---|---|
| AUTO GLASS 2020 LLC, | Case No.: Case No. 2:25-bk-00374-MCW |
| Debtor. | **DECLARATION OF KRISTY LESUEUR IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS** |

I, Kristy LeSueur, being duly sworn, hereby deposes and says:

I. **INTRODUCTION.**

1. I am the manager of Auto Glass 2020 LLC ("**Debtor**") in the above captioned Chapter 11 case and am authorized by Debtor to submit this declaration (the "**Declaration**") on behalf of the Debtor. I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that led to the commencement of this Chapter 11 case and in support of (a) the Debtor's petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") filed on January 16, 2025 (the "**Petition Date**") and (b) the requested relief, in the form of motions and applications, that Debtor has filed with the Court (the "**First Day Motions**") and the other pleadings and documents contemporaneously filed therewith. Debtor seeks the relief set forth in the First Day Motions with the goal of minimizing the potential adverse effects of the commencement of its Chapter 11 case on its business.

2. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, information supplied by employees under my

supervision, or my opinion based on experience, knowledge, and information concerning the operations of the Debtor. It is my belief that the relief sought in the First Day Motions is essential to ensure the uninterrupted operation of the Debtor's business and to the success of Debtor's restructuring.

3. I have reviewed each of the First Day Motions, am familiar with the factual information set forth therein, and incorporate such facts into this Declaration by reference and adopt them as my own as if they were set forth herein. If I were called upon to testify, I would testify competently to the facts set forth herein and in the First Day Motions.

## II. BACKGROUND OF THE BUSINESS OF DEBTOR

4. On January 16, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11, subchapter V of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States bankruptcy Court for the District of Arizona.

5. Debtor is an Arizona limited liability company formed on or about August 30, 2017, under the laws of the State of Arizona. My brother William Cash LeSueur is the Debtor's sole member, and I am the Debtor's manager.

6. Debtor is a windshield replacement and window tinting company operating out of two (2) locations located on the east and west side of metropolitan Phoenix, Arizona. The west side location is in the Metro Industrial Center at 10801 N. 24th Avenue, Suite 115-116, Phenix, AZ 85029. The east side location is in the Warner Commerce Park at 355 East Warner Road, Suite 4, Chandler, AZ 85225.

7. My brother and I grew up in a challenging economic environment. My family was not well off, and my brother often dreamed of bigger and better things for our family. We idolized our grandparents who encouraged us to pursue our dreams.

8. My mother was in a horrible car accident when I was very young that left her paralyzed. My mother was pregnant at the time and the baby died in the womb. My dad did his best to raise me and my brother and sister but eventually he succumbed to drug addiction and passed away after an overdose.

9. My brother Cash sought jobs as a salesman at a very young age earning commissions. Eventually, he obtained employment in the auto industry selling auto glass out of Cobble Stone car wash. In 2017, my brother formed the Debtor.

10. My brother built the Debtor into a very successful company. By 2023, Debtor has become the second largest auto glass company in Arizona. In 2023, Debtor's gross income equaled $14,302,042 with gross profit of $10,150,466 and ordinary income of 161,297. In the summer of 2023, Debtor was performing almost 500 jobs a week. By contrast, in 2022, Debtor had gross income of $6,006,729, gross profit of $4,254,578, and ordinary income of $409,599.

11. My brother is an alcoholic and attended Alcoholics Anonymous for approximately 11 years. By July 2023, he had been sober for over 10 years. His sobriety date was December 17, 2012. He relapsed and entered rehab in early summer of 2023. In or around July 2023, my brother was persuaded by his wife to leave rehab before his rehab was complete. Thereafter, he began neglecting the business of Debtor. Additionally, as a result of his addiction, the Debtor did not properly manage its business operations including its expenditures of cash. Income dramatically declined forcing the Debtor to obtain hard money loans to keep the ship afloat. These lenders have been aggressive and have interfered with the operation of the Debtor intercepting accounts receivable and causing a loss of cash flow. Eventually, the cash flow shortages have caused Debtor to incur substantial unpaid income, sales and other taxes.

12. In 2024, Debtor had total income of approximately $7,954,798.07, and gross profit of approximately $6,368,782.41.

13. I have assisted my brother in connection with all aspects of the operation of Debtor's business since its inception in 2017. On or about January 15, 2025, I became the sole manager of the Debtor responsible for all aspects of Debtor's operations including all decision making. I am familiar with and can properly and efficiently manage all aspects of Debtor's operations. Additionally, I am now the only authorized signer on the Debtor's accounts.

14. Under my guidance and with the help of the Bankruptcy Court, I will successfully manage the Debtor with the protection afforded by the automatic stay so that the Debtor will generate Net Disposable Income to fund its plan of reorganization.

15. Debtor has 29 staff members who are paid as 1099 independent contractors in connection with Debtor's day-to-day operations. Except for my brother, me, and Nicole LeSueur, the wife of my brother, all retained individuals are non-insiders. Most of these staff members live "paycheck to paycheck". All of the staff are critical to the operation of the business and are difficult to replace.

16. Debtor's payroll is made weekly. The first payroll following the Petition Date will be on Friday, January 17, 2025, Monday, January 20, 2025, and Tuesday, January 21, 2025, and covers the weekly period of January 5, 2025, through January 11, 2025. Similar compensation will be paid on Friday, January 24, 2025, Monday, January 27, 2025, and Tuesday, January 28, 2025, and covers the weekly period of January 12, 2025, through January 18, 2025.

17. Debtor believes that it is critical to make payroll in a timely manner in order to avoid any interruption in the operation of Debtor's business.

18. Pursuant to 11 U.S.C. § 507(a)(4), employees have a priority claim for unpaid pre-petition wages, compensation and other benefits earned within 180 days preceding the Petition Date, not to exceed $15,150 per individual. None of the personnel which will be paid post-petition were owed more than $15,150 on a pre-petition basis. Moreover, these staff members are still employed and used by Debtor.

19. Debtor utilizes utility services from Cox Business for internet, telephone and other related services, APS for electricity service, Salt River Project for electricity service, Vonage Business, Inc. for cellular service, T-Mobile for cellular service, and Nextiva for data retention services.

20. There are some relatively small past-due amounts owed to some of the utility providers which will be paid post-petition as reflected in one of the First Day Motions filed with the Court.

21. Another of the First Day Initial Motions is an *Emergency Motion for Interim and Final Order Authorizing Debtor to Use Cash Collateral* (the "**Cash Collateral Motion**"). Attached to the Cash Collateral Motion is a budget of projected and ordinary monthly operating expenses of Debtor. The use of cash collateral and the payment of the identified expenses is necessary to keep Debtor operating, to maintain the going concern value of Debtor and to avoid irreparable harm which would result if the expenses were not paid. Debtor has no unencumbered funds with which to pay such expenses and if such expenses are not paid, Debtor will be unable to continue its business operations. Debtor's income is regular based on the cash flow of business and the reoccurring income provides adequate protection for Debtor's use of cash collateral. It is my understanding that the United States Small Business Administration ("**SBA**") has a first lien on all of the Debtor's cash collateral, has been provided with a budget of income and expenses, and has approved of a preliminary version of the budget.

22. Debtor has net operating income that it will use to fund its plan of reorganization.

23. In order to generate net operating income, Debtor will undertake a thorough evaluation of expenses including controlling expenditures, costs and payroll.

24. Debtor is closely reviewing and monitoring its financial reporting to make sure it is meeting its needed goals.

25. Debtor will also evaluate its glass window replacement and repair incentive programs and marketing plans in order to further generate income.

26. I am also considering closing the west side location in the Metro Industrial Center in order to cut back on unnecessary expenses.

DATED this 16th day of January 2025.

By\_\_\_/s/ Kristy LeSueur_____
Kristy LeSueur